Entered on Docket
June 28, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**FILED**

JUN 28 2012

CLERK
UNITED STATES BANKRUPTCY COURT
SAN JOSE, CALIFORNIA

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>PETER A. CRAIGHEAD,<br>              Debtor | Case No. 09-61169-ASW<br>Chapter 13 |
| PETER A. CRAIGHEAD,<br>              Plaintiff,<br>vs.<br>CREATIVE INVESTMENT GROUP, INC.,<br>              Defendant. | Adversary No. 10-05379 |

**MEMORANDUM DECISION
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant Creative Investment Group, Inc. ("Defendant"), which the Court took under submission following a hearing on May 1, 2012. Plaintiff and Debtor Peter A. Craighead ("Plaintiff") has not filed any opposition to the Motion. Because Plaintiff has not come forward with any evidence to support an essential element of Plaintiff's claims, and for the reasons which follow, the Court grants the Motion.

I. **BACKGROUND**

Plaintiff's First Amended Complaint ("Complaint") asserts claims against Defendant for violation, including willful violation, of the automatic stay, as well as a claim seeking a temporary restraining order.

After a hearing held December 1, 2010, this Court issued a temporary restraining order, but set a preliminary injunction hearing for January 25, 2011. The hearing was continued multiple times, and in the meantime, the Court issued an injunction until the issues could be decided. Ultimately, after considering the parties' arguments and evidence, the Court dissolved the injunction on November 21, 2011. Therefore, the only claims remaining in the case are for violation of the automatic stay.

The property at issue is real property located at 7871 Prestwick Circle, San Jose, California ("the Property"). In the Complaint, Plaintiff alleges that Defendant willfully violated the automatic stay when Defendant conducted a trustee's sale of the Property on August 31, 2010. Defendant asserts that the trustee's sale on August 31, 2010 did not violate the automatic stay because Plaintiff had no legal or equitable interest in the Property on that date; therefore, the Property was not property of Plaintiff's bankruptcy estate and not subject to the automatic stay. The issue before this Court is whether Plaintiff had any ownership interest in the property on August 31, 2010, when the trustee's sale occurred.

Plaintiff filed the underlying Chapter 13 bankruptcy on December 21, 2009. Because Plaintiff had filed a previous bankruptcy (Case No. 09-58845-RLE) that was dismissed less than one

year previously on December 11, 2009, a 30-day automatic stay applied. See 11 U.S.C. § 362(c)(3)(A). Plaintiff filed a motion to extend the automatic stay pursuant to section 362(c)(3)(B) of the Bankruptcy Code, and the Court granted the motion to extend on April 2, 2010. The Court's order extended the automatic stay through August 31, 2010, the same date on which Defendant held the trustee's sale. Plaintiff's underlying bankruptcy case was dismissed on May 17, 2011.

## II. MATERIAL FACTS

Based upon the evidence submitted by Defendant with the Motion, which the Court construes in a light most favorable to Plaintiff, the Court makes the following findings.

The following facts concern the chain of title for the Property from August 21, 1997, onward. As explained below, the evidence shows that there was nothing remarkable about the chain of title until a trustee's sale was held on June 3, 2003, at which point there were two divergent sets of transactions concerning the Property. Under one set of transactions, title to the Property was purportedly conveyed to Plaintiff. Under the other, Plaintiff was never conveyed title.

On August 21, 1997, a grant deed was recorded by which Robert and Laura M. Thompson ("the Thompsons") conveyed all interest in the Property to Robert and Evonne Helwig ("the Helwigs"). On the same day, a deed of trust in favor of Accredited Home Lenders was recorded. The Helwigs were listed as the borrowers on this deed of trust, and Fidelity National Title Company was listed as the trustee.

On September 23, 1997, a substitution of trustee and full reconveyance of the deed of trust was recorded. The substitution of trustee substituted the Thompsons as trustees in place of Fidelity National Title Company. On May 19, 1999, a second substitution of trustee and full reconveyance of the deed of trust was recorded. This second substitution of trustee replaced the September 23, 1997 instrument and reconveyed the deed of trust in favor of Accredited Home Lenders.

On June 30, 2000, a grant deed was recorded by which Robert Helwig conveyed all interest in the property to David M. Craighead. On September 19, 2001, a grant deed was recorded by which David M. Craighead conveyed all interest in the Property to Carlton Craighead, Plaintiff's late father.

On June 3, 2003, a number of events transpired. First, at 8:37 a.m., a grant deed was recorded by which Carlton Craighead conveyed all interest in the Property to Theodore Gallis ("Mr. Gallis"). At 9:30 a.m., Mr. Gallis filed a voluntary petition for Chapter 13 bankruptcy (Case No. 03-53578-ASW). A trustee's sale scheduled for 11:00 a.m. went forward despite Accredited Home Lenders' knowledge of Mr. Gallis' bankruptcy case. On June 6, 2003, a trustee's deed upon sale conveying all interest in the Property to First Union National Bank as trustee for American Residential Eagle Certificate Trust 1998-1 was recorded.

At the time the June 3, 2003 trustee's sale was conducted, there was an automatic stay in place in Mr. Gallis' bankruptcy case. However, on September 18, 2003,[1] this Court issued an order

---

[1] The Court issued an oral ruling on September 18, 2003, which was followed by a written order on September 26, 2003.

for <u>nunc pro tunc</u> relief, retroactively annulling the automatic stay on the grounds that Mr. Gallis had filed the bankruptcy case with no intent to reorganize and with the purpose of "prolonging the hindrance of the [creditor's] foreclosure." In reaching this conclusion, the Court considered multiple prior bankruptcy cases by members of the Craighead family as well as the timing of the transfer of the Property to Mr. Gallis, and found that Mr. Gallis filed the bankruptcy petition "as another step in the Craigheads' pattern of delaying foreclosure." On July 13, 2004, the order for <u>nunc pro tunc</u> relief was upheld by the United States District Court (Judge Ware) on appeal (Case No. 05-cv-04452).

The order retroactively annulling the automatic stay in Mr. Gallis' bankruptcy case had the effect of validating Accredited Home Lenders' trustee sale of the Property held on June 3, 2003 and the June 6, 2003 trustee's deed upon sale conveying all interest in the Property to First Union National Bank. <u>See</u> Analysis, <u>infra</u>, at 9-11. Therefore, Mr. Gallis no longer had title to the Property after the trustee's sale on June 3, 2003 and recordation of First Union National Bank's trustee's deed on June 6, 2003.

Notwithstanding the trustee's sale stripping Mr. Gallis of any interest in the Property, Mr. Gallis attempted to transfer ownership of the Property after the trustee's sale. On September 19, 2003, one day after the Bankruptcy Court issued an oral ruling retroactively annulling the stay, but before the Court issued the written decision for <u>nunc pro tunc</u> relief, Mr. Gallis issued a grant deed conveying Mr. Gallis' interest in the Property to Carlton Craighead, and the deed was recorded. On December 24, 2005, Carlton Craighead issued a grant deed, later recorded on

Case: 10-05379    Doc# 46    Filed: 06/28/12    Entered: 06/28/12 15:31:17    Page 5 of 14

January 24, 2006, purporting to convey a 95% interest in the property to Carlton Craighead and a 5% interest in the Property to Plaintiff. On July 16, 2007, Carlton Craighead issued a separate grant deed, later recorded on August 3, 2007, purporting to convey a 99% interest in the property to Carlton Craighead and a 1% interest in the property to Plaintiff. It is based upon this series of transactions that Plaintiff claims an interest in the Property.

In the meantime, on February 14, 2007, a quitclaim deed was recorded by which Wachovia Bank, N.A., formerly known as First Union National Bank, transferred all interest in the Property to First American Title Insurance Company. Then, on March 7, 2008, a quitclaim deed was recorded by which First American Title Insurance Company transferred all interest in the property to Carlton Craighead.

The March 7, 2008 quitclaim deed references a notice of rescission recorded on January 18, 2008, and confirms that Carlton Craighead is the record owner of the property. The quitclaim deed does not specify <u>what</u> was rescinded, but mentions instrument number 19716887, which is not in this Court's record. On April 20, 2011, in the context of the proceedings in this case on Plaintiff's request for a temporary restraining order, Defendant submitted a Declaration from Stewart Title Insurance Company employee Gary Moore ("Moore Declaration"). The Moore Declaration purports to list all documents appearing in the public records after August 21, 1997 relating to or affecting the interest in the Property acquired or reserved by Carlton B. Craighead. The Moore Declaration does not provide any evidence of a January 18, 2008 rescission, or of

any rescission of the June 3, 2003 trustee's sale.

Counsel for Defendants, Wayne M. Abb ("Mr. Abb") stated on the record at a hearing on June 23, 2011 that notwithstanding the reference to a notice of rescission in the March 7, 2008 quitclaim deed, the June 3, 2003 trustee's sale was not rescinded. However, Mr. Abb's statements are not evidence and the Court does not consider such statements in rendering this decision.

Previously, in this Court's Order Dissolving Preliminary Injunction issued November 21, 2011, this Court remarked that based upon the record, it appeared that the June 3, 2003 trustee's sale was not rescinded and that Plaintiff never received any ownership interest in the Property.

### III. **STANDARD OF REVIEW**

Summary judgment shall be rendered by the Court if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 584-85 (1986). All reasonable inferences must be drawn against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Material facts are those that may affect the outcome of the case. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

Although Plaintiff has not filed any opposition to Defendant's Motion, Plaintiff's failure to oppose the Motion does not obviate Defendant's affirmative obligation to demonstrate the absence of a genuine dispute as to any issues of material fact. <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1182-1183 (9th Cir. 2003). However, because Plaintiff -- not Defendant -- bears the burden of proof at trial, Defendant may satisfy the burden of production under Rule 56 in either of two ways. First, Defendant may submit affirmative evidence that negates an essential element of Plaintiff's claim. Second, Defendant may demonstrate to the Court that Plaintiff's evidence is insufficient to establish an essential element of Plaintiff's claims. <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). If Plaintiff fails to produce sufficient competent evidence to establish Plaintiff's claim, then Defendant is entitled to summary judgment. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

### IV. ANALYSIS

The issue in this case is whether Plaintiff had any ownership interest in the Property on August 31, 2010, when there was a trustee's sale of the property. Only with such ownership interest can Plaintiff prevail on Plaintiff's claims that the August 31, 2010 trustee's sale violated the automatic stay in Plaintiff's bankruptcy case.

Defendant's Motion contends that Plaintiff cannot establish that Plaintiff held an ownership interest in the property on August 31, 2010. Plaintiff has not opposed Defendant's Motion, but in the context of the restraining order proceedings, Plaintiff previously

offered as evidence of Plaintiff's ownership of the Property two grant deeds -- the first by which Carlton Craighead purportedly transferred a 5% interest to Plaintiff on December 24, 2005, and the second by which Carlton Craighead purportedly transferred a 1% interest in the Property to Plaintiff on July 16, 2007. Additionally, Plaintiff previously submitted two preliminary title reports issued by First American Title Company, both of which reflect what is on the July 16, 2007 grant deed -- namely, that as of October 14, 2009 at 7:30 A.M., Plaintiff owned a 1% interest in the Property.

Carlton Craighead's execution of the two grant deeds is not disputed. However, Plaintiff has not provided any evidence addressing the underlying question of whether Carlton Craighead had any interest in the Property to convey when Carlton Craighead executed the two grant deeds.

When the trustee's sale occurred on June 3, 2003, there was an automatic stay in Mr. Gallis' bankruptcy case which rendered the trustee's sale void. See Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992). This Court later annulled the automatic stay in Mr. Gallis' bankruptcy case retroactive to June 3, 2003. However, Mr. Gallis also transferred his interest in the Property -- if any -- to Carlton Craighead. This Court must resolve whether Mr. Gallis' transfer of the Property to Carlton Craighead had any legal effect.

This issue is best resolved by looking at the reasons the Court retroactively annulled Mr. Gallis' stay, and the timing of that ruling. Although troubled by the violation of the stay in Mr. Gallis' case, the Court annulled the stay because the facts of the

case were "quite extreme" in that members of the Craighead family had engaged in a pattern of delaying foreclosure of the Property through multiple bankruptcy filings and later by transferring the Property to Mr. Gallis, apparently without any payment by Mr. Gallis, so that the Property would be shielded from foreclosure. Specifically, approximately one hour after members of the Craighead family transferred the Property to Mr. Gallis, Mr. Gallis filed the bankruptcy case, with a patently unconfirmable plan, and apparently with intent to hinder the foreclosure and no intent to reorganize. The transfer by Mr. Gallis to Carlton Craighead after the June 3, 2003 trustee's sale, and after the Court's oral ruling granting retroactive annulment of the stay, would appear to be another act in furtherance of the Craighead family's scheme.

Although In re Schwartz clarifies that violations of the automatic stay are void, rather than voidable, the decision also explains that "[i]f a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue." 954 F.2d at 571-73. The decision in In re Schwartz also explains that under § 362(d), bankruptcy courts have the "power to ratify retroactively any violation of the automatic stay which would otherwise be void." Id. at 573. Consequently, because the Court ordered retroactive relief from the automatic stay in Mr. Gallis' bankruptcy case, the trustee's June 3, 2003 sale did not violate the automatic stay and was not void. See id.; see also In re National Environmental Waste Corp., 129 F.3d 1052, 1054-56 (9th Cir. 1997) (discussing bankruptcy court's authority to retroactively annul the automatic stay, citing In re Schwartz);

Khozai v. Resolution Trust Corp., 177 B.R. 524, 527 (E.D. Va. 1995) (under § 362(d), a bankruptcy court may retroactively annul the automatic stay to validate a foreclosure sale); Matter of Ricks, 26 B.R. 134, 137-38 (Bankr. D. Idaho 1983) (validating foreclosure sale nunc pro tunc).

In addition, the Court retroactively annulled the stay in an oral ruling issued September 18, 2003 -- one day before Mr. Gallis transferred the Property to Carlton Craighead. Although the ruling was not set forth in writing until September 26, 2003, the September 19, 2003 transfer of the Property from Mr. Gallis to Carlton Craighead lacked legal effect, because Mr. Gallis had no ownership interest to convey. See Noli v. Commissioner of Internal Revenue, 860 F.2d 1521, 1525 (9th Cir. 1988) (a ruling lifting an automatic stay is effective and binding when stated orally on the record). Consequently, Carlton Craighead did not possess any interest in the Property from June 3, 2003, when First Union National Bank took title, until March 7, 2008, when First American Title Insurance company executed a quitclaim deed in favor of Carlton Craighead.

Similarly, all of the conveyances of the Property by Carlton Craighead to Plaintiff after September 19, 2003, were invalid because Carlton Craighead had no interest to convey until March 7, 2008, when Carlton Craighead apparently took title pursuant to a quitclaim deed. There is no evidence in the record that Carlton Craighead attempted to convey the property to Plaintiff at any time after March 7, 2008. Therefore, the record reflects a complete lack of evidence demonstrating that Plaintiff had any ownership interest in the Property. Consequently, the trustee's sale

occurring on August 31, 2010, could not violate the automatic stay in Plaintiff's bankruptcy case.

There is, however, one additional factual issue. The quitclaim deed recorded on March 7, 2008 in favor of Carlton Craighead refers to a January 18, 2011 notice of rescission. If the June 3, 2003 trustee's sale had been retroactively rescinded, it would support Plaintiff's assertion that the transfers of property from Mr. Gallis to Carlton Craighead, then to Plaintiff, were valid. In turn, this would mean that Plaintiff held an ownership interest in the Property at the time of the August 31, 2010 trustee's sale.

However, apart from the stray reference to a possible rescission in the quitclaim deed, Plaintiff has not produced any evidence, such as a notice of rescission, that the June 3, 2003 trustee's sale was, in fact, rescinded. After the Court previously requested additional information from the parties on this issue, Plaintiff came forward with no additional evidence and has not even contended that the June 3, 2003 trustee's sale was rescinded. Moreover, the Moore Declaration indicates that the trustee's sale on June 3, 2003 was not rescinded on January 18, 2008 or at any other time.

Because Plaintiff has produced no evidence that the trustee's sale on June 3, 2003 was rescinded or otherwise invalid, Plaintiff has not met Plaintiff's burden of establishing that Carlton Craighead had any interest in the Property to convey to Plaintiff at the time the conveyances were attempted, specifically, on

December 24, 2005 and July 16, 2007. Therefore, Plaintiff has not demonstrated that Plaintiff held any interest in the Property on August 31, 2010, when the trustee's sale was conducted. Because this is an essential element of Plaintiff's claims that Defendant violated the automatic stay, Defendant is entitled to judgment as a matter of law. See Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102; Celotex Corp., 477 U.S. at 322-23. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: 6/28/12

ARTHUR S. WEISSBRODT
United States Bankruptcy Judge

Court Service List

Peter A. Craighead
7871 Prestwick Circle
San Jose, CA 95135

Wayne Abb
21601 Vanowen Street, Suite 208
Canoga Park, CA 91303

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California